Bradley argument not to exceed 30 minutes per side. Mr. Terry, you may proceed first for the appellant. May it please the court. I'm Michael Terry and I represent Jonathan Barrett.   The issue we present for review is our contention that Jonathan Barrett never joined the count one conspiracy. We contend that count one charges a specific conspiracy with precisely stated specific objects of the conspiracy and that Jonathan Barrett never participated in or joined the conspiracy. Knowing involuntary joining of the conspiracy is an essential element of the conspiracy. We contend that this record contains no evidence whatsoever and certainly no substantial evidence to support the element of knowing joinder of the conspiracy. The precisely stated objects of the count one conspiracy are on page two of the fifth superseding indictment. There government lawyers alleged in a separate paragraph titled object of the conspiracy that the number one, the object of the conspiracy was to distribute and possess with the intent to distribute counterfeit pills that contained fentanyl. Number two, a further object of the conspiracy was to obtain monetary profits in the form of illegal drug proceeds from the distribution of the counterfeit pills. The government further alleged in the indictment on page two means manner and means of the conspiracy which actually include manufacturing. Manufacturing was not charged in the charging paragraph but is described as a manner and means of this conspiracy. Specifically, the government charged that it was part of the conspiracy to manufacture counterfeit Percocet pills using fentanyl in the middle district of Tennessee. Number two, it was further part of this conspiracy to use pill pressing equipment in the form and stamp the pills to appear identical to actual. I think I'm not quite following along. So is your point that your client was at the end of the line in terms of the conspiracy was just selling these fake Percocet and didn't know the origins of how they're being manufactured or had no connection to Bradley who was manufacturing them? Is that what you're... No, your honor. Certainly he was at the end of the timeline. He was not at the end of this conspiracy. He never joined this conspiracy. In order to be a part of this conspiracy, he must have known the objects of the conspiracy. And the proof in this case shows clearly that Jonathan Barrett never knew the objects of this conspiracy. Okay, counsel, let me ask you, because this is concerning. You say he never knew the object of the conspiracy. And there, are you making a distinction between he never knew that the object was to sell drugs or he never knew that the object was to sell counterfeit pills? Is that a difference? And then secondly, on the manufacturer side, in these drug operations, there can be a conspiracy where there's going to be the manufacturer and sale. Not everyone has to be involved in manufacturing, but they can still be part of the conspiracy. Going to the first question, is it... Are you saying that this conspiracy requires that he have specific knowledge and have agreed to the object of selling counterfeit drugs? Not just drugs generally. Yes, your honor. Because the indictment specifically names as the object of the conspiracy that the distribution and possession with intent to distribute counterfeit pills that contain fentanyl. Okay. Did Mr. Barrett have to be... Did he have to have made an agreement to do something? Did he make an agreement to do something, whatever that something was, with respect to this operation? He... In the government's brief, the government focuses on the end of the line, the last day of the facts where Mr. Barrett bought 150 pills that were brokered by Ms. Belgonski from Johnny Williams. And then Mr. Barrett, who was a local neighborhood pill pusher in an opioid pandemic, distributed... Began to distribute those pills to his friends and his family, which is what his business was. Now, yes, he agreed to do that. There's no doubt about that. And the government actually focuses on that as their argument that he joined this conspiracy. Our position is that it at best is a separate conspiracy and not a part of the conspiracy that's alleged in count one. The conspiracy alleged in count one actually begins in China with the purchase of fentanyl by Eric Falkowski, then the manufacture of pills in Florida, in Tennessee, the intentional inclusion of fentanyl in those pills, and behavior conduct that is consistent with the objects. And the object being to sell pills that were counterfeit, that looked like Percocet, that contained fentanyl. And to join this conspiracy, you must have known that and you must have participated in that. When you look at the conduct of our client and compare it with the conduct of the other defendants, it is the reason why in our reply brief, we ask you to be very careful to look at our case separate from the other defendants. The facts that apply to Jonathan Barrett are very different than the facts that apply to the other defendants. Jonathan Barrett did not know any of these other people except for Jennifer Dalkonsky, who was his friend, who was an opioid user and went out using four prescriptions to get opioids, real opioids, and then Jonathan would distribute them. That's what they did in their neighborhood. But on this day, she made a connection with somebody who they did not know, and these counterfeit pills were purchased. I'm sorry. I don't want to put too fine a point on this, but I want to get back to your argument that Mr. Barrett did not knowingly and intentionally join a conspiracy. I know you're arguing that he didn't know a number of these people earlier in time in terms of manufacturing, but I want to focus a little bit on the argument that Mr. Barrett did not know that there was fentanyl in these counterfeit pills. I guess your argument is that to join this conspiracy as set forth in the indictment, he had to have known that these pills were laced with fentanyl. I guess if that's the part of your argument, is there a case that really supports that argument? The government says something to the effect that he simply had to know that he was selling illegal drugs. So I want to focus a little bit on this fentanyl portion that he did not know that the fentanyl was in the pills and therefore would not be captured by at least count one or maybe the other counts of the superseding indictment. The case law is clear that, and we've cited several cases, that you cannot join a conspiracy unless you know the objects of the conspiracy. So had the government pledged this as a drug conspiracy and not included these specific objects about counterfeit pills, about the manufacture of counterfeit pills, about the distribution of counterfeit pills, about the inclusion of fentanyl, all of these were included as objects of this particular specific conspiracy? What if the government had just said counterfeit pills and had not included with fentanyl? Then you would have had to have known, if the object was the manufacture and distribution of counterfeit pills, then you would have had to know that the pills that you were distributing were not Percocet, that they were counterfeit. Okay. Your initial time has expired. You'll have your full rebuttal time. Thank you. Okay, who? Hi. Good morning again, Your Honors. Matthew Robinson. May it please the court, Matthew Robinson on behalf of the defendant appellant, Judon Bradley. I appreciate the co-appellant's counsel and his arguments because they kind of shed light on the problems Mr. Bradley has too, although in a different way. You know, working through the brief, Mr. Bradley stands convicted of the conspiracy count, yes, but several substantive counts, counts 2 through 5 and 7 through 10, for the in-line distribution of these fentanyl pills to users in and around Murfreesboro. You know, at this, but the only connection and literally the only connection to those sales in Murfreesboro is the fact that Mr. Bradley participated in the production of those, of the substances, of the pills. You know, and if you look through the counts, it addresses, you know, really almost 10 layers of transactions, and it's the bottom, everything after the second layer, Mr. Bradley had no knowledge of, no participation in, didn't further, didn't seek to advance, didn't encourage in any way, and had no knowledge of. So, if you look to how the timeline of the distribution, it was that, you know, Mr. Bradley and Kalkowski and Davis and Knowles all assisted each other in the manufacture of this substance, and of course their goal was to sell it. I can stop you. I mean, it just seems like your client knew the origin of these pills. Yes. Worked with a couple colleagues to manufacture them, and he knew that they were going to be distributed. Yes. For sale, and maybe to go back to Judge Cole's, to Judge Cole's question to the last counsel, but is there a case that says he has to know that every last distributor and customer, I mean, I think once you set that wheel in motion. And I apologize, Your Honor, I don't mean to talk over you. Okay. I mean, you did, but it's okay. I apologize. I know I did. That's okay. I was just getting to the same, I mean, I just, it sounds like you don't understand the question, but it just seems to be quite common for most people who are kind of at the top of the conspiracy to not know every last rung. So, go ahead. Well, and I agree with you 100%, but I'm not arguing there's insufficient evidence of a conspiracy, or that even there's insufficient evidence that Bradley participated in a conspiracy. The principal argument here is that there's no evidence that he is guilty of any of the substantive counts of distribution that were charged in this indictment. If, for example, there was a substantive charging of the dividing up of the drugs once they were manufactured and the distribution of the drugs initially to Davy Velez Jr. by Preston Davis, certainly I would think that Mr. Williams, or excuse me, Mr. Bradley would be culpable for that transaction, but that transaction is not charged. Instead, he is charged for transactions that occurred in Murfreesboro, three sales, or at least two sales, probably three with some of these after the initial transference of the controlled substances to Davy Velez. So, with respect to the substantive counts, there's simply just no evidence that he knew of these transactions. Certainly, they could be foreseeable that these drugs are going to be sold. When he was manufacturing them and they were getting them ready to be sold, certainly the idea is to sell the drugs. But with those in-line users, he never, and particularly with the counts charged, two through five and seven through ten, there's simply no evidence of Bradley participating in those transactions or encouraging them in any way. In a different city. Yeah, it's just hard to figure out where we draw the line because we have cases that say as long as you're in the distribution chain, that's enough. And I don't know, but if it's two cities away or if it's three rungs below, that's where we somehow draw the line. Maybe you can help me with that. And I'm struggling with it as well, Your Honor, because there has to be a point. I mean, because technically, if this logic continued, every pill that got out there into society that someone took, technically, and that was sold by someone else to another individual, that would make Bradley in the chain of distribution because he was at the top. And it just simply makes no sense to go that far down the line. It's almost impossible to, the limit, there has to be a limit. And we're submitting that when you're dealing with no evidence whatsoever of any encouragement to these transactions other than the initial production of the drugs. You know, there has to be some other form of encouragement to be convicted under a theory of aiding and abetting. So, with respect to this, counsel, we're going to ask that they be vacated. And I need to get to my second point quickly, if I may, with respect to Mr. Bradley's second argument, which is that, and it goes towards co-parlance counsel's argument, kind of lends itself to it, is that these are multiple conspiracies charged here in one indictment. There's clearly one conspiracy that is taking place with Falkowski and Bradley and Davis with respect to the manufacturer and the initial idea to manufacture these drugs and get them out on the streets and sell them. But then once they get into the hands of Velez, and then they are gone through Duginsky and Barrett and Moss and Williams, all individuals that are not connected whatsoever to the actual conduct from the manufacturing sale in Madison or Nashville, these become two conspiracies. So, with respect to that, we have a variance because, you know, Mr. Bradley has no way to know what he has to defend against. Certainly, if it was a conspiracy charged to manufacture and distribute fentanyl pills with Falkowski and Davis and Knowles, and, you know, perhaps Mr. Bradley would have just pled guilty to that offense. But instead, he sees an indictment with people he's never heard of, you know, things that he had no first-hand control of, certainly, or second-hand or even third-hand control of, and we have an inability to defend against that. In addition to that, it makes the offense seem so much more serious. Clearly, the offense is serious of producing these drugs and selling them. They're dangerous. It's horrible. However, when you add on, at the end of the day, all these distribution offenses to which he never even participated in, which is actually a second conspiracy, we have a variance in the indictment that affects his substantial rights. Do you agree that the legal standard is that we have to rule out any possibility of a single conspiracy? In other words, you're making a, you know, maybe compelling argument that there could be multiple conspiracies here. Is the legal standard that if there's any chance that there was a single conspiracy, we should affirm? No, I don't think that's the standard. I think the standard is there is – well, first of all, there's clearly two different conspiracies here. There's a chance there could be one conspiracy, I suppose. I mean, if you – if the chance of something happening is to be infinitesimal and you – and if the court upholds it on that minute chance, well, that doesn't seem to be equitable in any way. I think it delves away from the clear evidence in this case, which is there are two conspiracies. And the government concedes that there can be and it more likely looks like more than one conspiracy. And with that, we'd ask the court to reverse the convictions on both the conspiracy counts and the substantive distribution counts. Okay, thank you, Mr. Robinson. You'll have your two minutes of rebuttal, and we'll hear next from Mr. Jaeger. May it please the court, good morning. My name is Steve Jaeger, and I represent Johnny Williams. I'm going to just very briefly talk about this conspiracy issue because I joined arguments in my jail counsel. The answer to the judge's question, a defendant's participation in the criminal scheme is not enough to sustain a conspiracy conviction unless the defendant knows its ultimate purpose. You can look at United States v. Morrison, United States v. Sliwo. A charge of conspiracy must be made by an inference upon inference. And the theme of both of my arguments today on the conspiracy issue and suppression issue are that words matter. Words matter because it's the government that define the scope of this conspiracy. They define the scope, as Mr. Terry said, as a fifth superseding indictment. It's very specific. It includes the purpose of manufacturing and distributing counterfeit pills containing fentanyl. It's not a general, generic charge of conspiracy. Moreover, words matter and the court's instructions in it, the emphasis that was given to this fentanyl and counterfeit pill factual situation. In the jury instructions, if you look at those in, I think, the record number 617, 4543 to 4545, the judge has been elected six times to tell us the jury. This is a conspiracy about fentanyl and counterfeit pills. The words matter. The proof matters also because there's nothing to show that Mr. Williams had any knowledge or understanding to join any conspiracy to distribute or possess with intent to distribute counterfeit pills containing fentanyl. And the indictment joins that, by the way. These aren't two separate things to look at. They're one, because the indictment says, words matter, counterfeit pills and containing fentanyl. It's a one thing. The Pinkerton indictment doesn't apply, extending this all the way down the chain, because it was not reasonably foreseeable in preference of any conspiracy that the pills that were ultimately obtained down the chain were counterfeit or contained fentanyl. The proof is clear on that. Everybody thought they were Percocet pills. You look at the chain, it goes Falkowski, Bradley, and Davis were the manufacturers. Their intent is to do these pills looking like Percocet with fentanyl. Davis distributes them then to Ballas. Ballas then distributes them to Williams in a manner arranged by Thomski. It's all the way down the chain. So you can't have one conspiracy if the people that are charged with that don't know its ultimate purpose, its ultimate goal, its object. And that object was defined by the government. I think this is the question that Chief Judge Cole asked earlier, but what's the best case that says that they have to know? I mean, your client's sort of in the middle. I think we've heard from someone who's an end distributor, and we've heard from someone who's one of the defendants who was in the manufacturing, and your client's in the middle. But what's the case that says that they have to know exactly the nature of the drug that they're distributing? I mean, sometimes in sentencing we say so long as you agreed to distribute a drug, just the fact that you didn't happen to know it is laced with something maybe more fatal. That's the consequence that you assume. Is it a different rule on the conduct issue? I think the difference is that could be the general rule in a generically charged conspiracy for drug trafficking, possession with intent to distribute. I think it gets cut off when you look at what is the object of that. And the object is defined by the government. It's very specific. And they did that for evidentiary reasons at trial. I understand. Yeah, I'd love to hear more about that, because it seems like it penalizes the government for being precise, and you're saying you prefer a rule that's quite a broadly pled conspiracy where there's not much specificity as to the drug. But maybe there were evidentiary issues. I didn't really mean to cut you off, but I would be curious to know why. I just think it's a choice that was made by the government to plead it this way, because it allowed them to get to some other evidence on the substance of charges, the injuries that were sustained. And there was a couple of deaths all the way down this chain. And in terms of the... I think they had to be bound by what they had chosen to charge. I think due process requires that. And most of the time, they don't charge them like this. They charge a general drug conspiracy. And the court generally says in the instructions what the elements are. But in this particular instructions that we're given, there are four or five different comments by the court. This is a conspiracy about fentanyl and counterfeit fuel. I guess I would have thought that your client would prefer to be charged this way. Isn't it easier to prove a more broadly alleged conspiracy as opposed to one that's more precise in terms of the type of drug? Well, I don't think that the... There's a complete lack of proof here about his knowledge about this particular conspiracy that was charged. That's where we get into Mr. Robinson's argument. There are multiple conspiracies here. There's no question about that. It's just whether or not where the ultimate responsibility lies. I guess I was thinking of the pleading matter. The way it was pled here, it seems like it would tie the government's hands a little more as opposed to a broadly pled conspiracy. It would be harder for your client because more evidence could come in or more allegations could come in that you weren't expecting. I understand your argument about this specific case. I was just trying to figure... I don't know. I think the government tied its own hands perhaps in this case is what I think happened. I'm sorry, Mr. Diggins. Judge Raylard asked you about really your best case or two that you cite for that proposition. Is that Sliwo? Is that where you're at? I think if you look at Sliwo, it talks about an inference upon an inference. When we get down to where my client rests and beyond him, they're inferring that everybody knew about this specific object, and they didn't, and there's no proof that they did. All right. Thank you. If I can move on to suppression because that's a very important issue for my client. The statements made by Mr. Williams during a custodial interrogation should have been suppressed. If I'll step forth on my brief, but you need to look at what a reasonable person would have understood his situation. I think it's very brief because I'm running out of time here. Go through the facts because the words matter here too. Six officers go to his house to take him to the police station. Some are in uniform. Some are not. That's a show of force. It starts as a show of force from the beginning. The officer of the suppression unit said, uniform people are there because it's important that people know the police are there. They knock on his door. They wake him up. He says, what is it that you all want? What do they say? We'll talk to you at the police station. They get to the police station. The building's not open to the public. They go through a pass-coded door. A badge is needed for entry. They describe their own encounter with him as escorting him to the building. They get up to the interrogation room. He says, hey, I don't want to be here. I don't have a lawyer, you know. So they say, okay. They take him back downstairs. That was an unapprovable request because they understood to be such because they stopped the interview the first time. But seven minutes later, they take him back. They take him back upstairs. They start to read him. His Miranda writes. He tries to interrupt them and say, wait a minute. We've got to get through this first. He initially asked for a term if he wanted to leave. It should have stopped there. It didn't. They take him back up. Ultimately, he said, you know, he wants to talk to him and assert his rights. There's enough pressure in this environment that he gives a statement. He then, Massey says, the detective does testify at some point that on a second occasion he asked for an attorney. They ignored that request. They didn't cease the interview until they had the statement, and he made a third request for an attorney. My case to look at is I think the court relies on Burgess and Tompkins. This case is very distinguishable from that case because throughout this process, he's trying to find out what's going on. He's asking for a lawyer. He said he doesn't want to be there. He ultimately did a statement. They don't terminate it until his third request for an attorney. I think, and I think the law requires, due process requires, that Mr. Williams had been given an opportunity. When they say he was trying to interrupt the Miranda warning, he should have been listened to that second occasion. He should have been given the opportunity to invoke his rights before giving any answers or admissions. Thank you, Mr. Jager. Your initial time has expired. You'll have two minutes of rebuttal. Thank you for giving me a little bit of time. Okay. Liz Klopf? Thank you, Your Honor, and may it please the court, my name is Amanda Klopf, and I represent the United States of America. So before I get started, I just wanted to clarify one thing for the record. During the course of argument, counsel for defendant Barrett argued that Mr. Barrett didn't know any of the defendants other than Jennifer Degonski. And the record doesn't show that. The record actually shows there was a prior interaction with Williams, a prior sale that had occurred earlier in time before July 5th. Also, there's relationships with unindicted co-conspirators like Tisha Randolph, who is discussed more at length in my brief. But she was a further down the train distributor, and he had a prior relationship with her as well. So getting to the merits, I'd like to start with the issues that are raised regarding count one. Now, in this indictment, all of the defendants are charged with violation of Title 21 United States Code Section 846. The elements of such a violation are clearly defined by both statute and case law. First, that the defendants have to have agreed to violate the drug laws, and second, that they knew and intended to join that conspiracy. The mere fact that everyone may not have known what the controlled substance was is legally irrelevant. The case law makes clear the defendant does not need to know what drugs are in a drug trafficking conspiracy, merely that they agreed to distribute controlled substances. Does that turn it all on the way the case is pled? I mean, your friends on the other side talk quite a bit about the way you pled the case and the object of the conspiracy, and you're quite precise. It was these tonic-fed Percocet with fentanyl. So how much does that issue turn on the way the government charges the case? It doesn't turn on that issue, Your Honor. In this case, there was a speaking indictment that provided a lot of extra detail. The object of the conspiracy was defined as distribution and possession with intent to distribute, and then it was defined as counterfeit pills that contained fentanyl. If this case was charged the same way and it said methamphetamine or it said cocaine, the result would be the same, that the defendants did not have to know what the drug was, simply that that was the drug that was being possessed with intent to distribute and distributed. That kind of sounds a little bit inconsistent, though. If you say it charges that it was a conspiracy to distribute counterfeit drugs containing fentanyl, isn't there a requirement at least then that they have to know that whatever drug it was was counterfeit? Because counterfeit here seems to define the drug. So am I incorrect there? Your Honor, in this particular case, it simply puts the defendants on notice what drug was at issue, being that these were pills that appeared to be Percocet, but in fact were counterfeit pills that had fentanyl in them. So if they're joining this conspiracy and that's the object, doesn't there have to be some knowledge on the conspirator, some common knowledge that this is what the substance, that the substance was at least counterfeit? Respectfully, no, Your Honor. What is at issue here is that they're joining a conspiracy to distribute a controlled substance and that controlled substance being counterfeit pills that contained fentanyl. The controlled substance being the fentanyl, but it simply adds detail to what the defendants were distributing as opposed to their knowledge of what that is. The object of the conspiracy does not impute a knowledge element to that. It simply puts the defendants on notice of what they were distributing. And based on this court's case law, an indictment can't increase a government's burden. I'd point the court to United States v. Kettles, a recently decided case. The indictment contained superfluous elements that the district court didn't require the government to prove. While the indictment can't increase the government's burden, doesn't the government have to prove the indictment? The government is the master of its indictment, and so it has to prove the elements of that indictment. Certainly, Your Honor, which it did here. It proved that the defendants conspired to possess with intent to distribute and to distribute pills. Those pills happened to contain fentanyl. Those pills happened to be counterfeit. And a part of that indictment, there has to be an agreement, some agreement for the conspirators, and it is to commit an unlawful act, and here you say it was to distribute drugs. And so you said that is really what they have to prove and all of these other things about fentanyl lacing and all that, that's just added detail. Yes, Your Honor. Okay, but that added detail, when you get into the proof, is really the things that drives a lot of the penalty and the other stuff for this conviction. Yes, Your Honor, and if this were a Section 371 conspiracy, we might be having a different conversation, but it's not. It's a Section 846 conspiracy, and those elements are clearly defined by case law. And this court has repeated time and time again that a defendant does not need to know what the drugs are. They simply need to know that they're controlled substances. In fact, the cases that are argued by the appellants, Flywo and Morrison, in those particular cases, Morrison specifically, the United States proved that the defendant knew that he had hidden some sort of contraband in his car, but they did not prove that he knew that it was controlled substance. That's not the case here. These defendants all knew that they were distributing some sort of a controlled substance and that they were conspiring to distribute some sort of a controlled substance. They just were operating under a misapprehension of what that controlled substance was, and I don't concede that all of the defendants didn't know. I'm talking specifically about Williams and Barrett. They may not have known what the contents of those pills were. What about the Flywo decision? That seems to be the focus of counsel on the other side today. There, again, the United States failed to prove that the defendant knew that the conspiracy he joined was one to violate the drug trafficking laws, and that's not the case here. This is very clear that all of the defendants knew exactly what they were doing, being that they were conspiring to possess with intent to distribute and distribute controlled substances, those being pills. The pills just ended up not being Percocet. They had Fentanyl and Alpravlim and acetaminophen in them. The two that were allowed to settle their cases by plea, did they have that same baseline knowledge? There were actually multiple defendants who pled guilty, some off of information. The ones that were charged in the conspiracy? In this conspiracy, and that being Davy Vias and, pardon me, Jennifer Degonski was charged in a separate information, and Eric Fikowski. Eric Fikowski produced the pills, so he did know that they contained Fentanyl because he made them. Davy Vias, the evidence did not show that he knew that they were counterfeit, but he did plead to the same charges. But the fact that he didn't know that they were counterfeit, would that matter? No, it did not matter. Okay. So, just to close out this argument, even if these defendants sincerely believed that they were illegally selling Percocet rather than illegally selling Fentanyl, it truly doesn't change the results. The way that indictment is crafted is simply, it puts the defendants on notice of what drug we're talking about, but it doesn't in any way change the object of the conspiracy, pardon me, the elements of the conspiracy and what the United States must prove. And I just do want to circle back to Kettles because the Sixth Circuit dealt with a similar issue where the indictment contains superfluous elements, and the district court did not require the United States to prove it up. And the Sixth Circuit actually said that indictments routinely can include allegations that are over-inclusive, and that those can be ignored when crafting jury instructions and verdict forms. So, unless the court has any more questions about that particular issue, I'll move on to the next. Okay. So, in this particular case, this is a chain conspiracy that all of the defendants joined. Drug conspiracies can often be described as chain conspiracies because the agreement can be inferred as you move down the chain that all the participants understand they're participating in some sort of a joint venture. In Beals, this court explained that all participants need to share the common goal of making money by distributing drugs. And there, each participant was aware to some extent that the conspiracy was larger than simply his or her individual interactions with others. And that's what's happening in this particular case. In Smith, this court explained that to prove a conspiracy, the government needs only show that each alleged conspirator had knowledge of and agreed to participate in what he or she knew to be a collective venture directed towards a common goal. In this particular case, it's also, pardon me, under Martinez, this court has also explained it's immaterial that the defendants didn't play a central role in the conspiracy, and that the government doesn't need to prove that there's an agreement on all the details. Indeed, in Caver, this court explained that once the existence of a conspiracy is shown, the evidence linking an individual defendant to that conspiracy actually needs to only be slight. So in this particular case, there is a chain conspiracy. We were able to prove from the person who ordered the fentanyl from China down to one of the last people in the chain of distribution and how they were tied together. This is a single chain conspiracy, not multiple conspiracies. What's the best evidence that Barrett agreed to join this conspiracy? He's got a friend, Dogonsky, who I don't think had done drug deals in the past. What links him to this chain of events that goes back to China and the original manufacturing as opposed to just agreeing to sell some drugs that a friend gave him? The evidence of trial established that he had a long relationship with Dogonsky that involved pills and the sale of pills. She had known Barrett since the summer of 2015, approximately a year prior, and historically had provided him with pills to resale. The two don't know each other quite well, but what links would take that back up the chain to the initial manufacture of Percocet with the fentanyl? Again, this is a classic example of a defendant not needing to know all of the conduct of his co-conspirators, just generally understanding that he is engaging in a chain conspiracy that is reliant on those persons higher up the conspiracy to do conduct, but he's not involved in the intimate details of it. That's right, yeah, this is after he's done this before and is buying drugs from again to sell. How does he know this is any different than a dump? Which conspiracy is this a part of? Why relates this specific conduct to these specific individuals as opposed to some others? In other words, the fact that they have a longstanding relationship, actually, in my mind, arguably could cut against your case here. Well, in this particular instance, Barrett was reaching out to Dugansky to try and get pills for multiple days prior. Dugansky then found out that Williams had pills to sell. Barrett had bought pills from Williams on one other occasion. Barrett had been in, Dugansky, I'm sorry, Dugansky brought Williams to Barrett's home. Barrett took a number of steps to try and make Williams feel more comfortable, including inviting him into his home to do the deal. So there was an effort to create a longstanding relationship. And so and even assuming arguendo that there are multiple conspiracies in this particular case, the defendants can't show prejudice because the evidence showed that they conspired with other co-conspirators above and below them on the chain of distribution. And so if this were charged as multiple conspiracies, the result would still be the same. And nothing of significance turns on the number of conspiracies. I'm not conceding that there are solely multiple conspiracies here. There is one single chain conspiracy here. But there is no indication on this particular case that the error of trying multiple conspiracies under a single indictment substantially influenced the outcome of the trial. There was significant evidence against each of these defendants about their conduct in relation to the individuals above and below them on the chain of conspiracy. So let me ask you a question related to Jesrela's question about the low end, the down chain purchaser. So the down chain purchaser in this example, this hypothetical, knows about the existence of the drug conspiracy even back to China, knows that these people are doing, have this business going on. And this downstream person purchases drugs from the entity, the enterprise. And maybe they've done it a couple of times. Are those purchases from somebody with whom he has a longstanding knowledge and let's throw in relationship? Is that enough to sweep that downstream purchaser who's going to fail, in turn, fail? Is that enough to sweep them within the orbit of that conspiracy? Yes. Yes, Your Honor. In terms of the chain conspiracy and a chain conspiracy, particularly as charged in this particular case. And so whoever this downstream purpose person sells to, do they get swept in? Yes, Your Honor. And indeed, in this particular case, it's the people. Pardon me. Just because they didn't play a central role in the conspiracy, they still are participants in the conspiracy if they have engaged in an agreement with others to distribute and possess with intent to distribute drugs. Depending on the facts of the case, a U.S. Attorney's Office may choose to plead it differently. In this particular case, the entire chain of distribution was charged because it was able to be proven. The pills at issue in this case were very unique. They all said A333. They had a particular chemical makeup, which was alprazolam, acetaminophen and fentanyl. By that, it made it very easy to establish the steps along the way in the chain of the distribution. So to answer your question, yes, those participants are part of the conspiracy. In this particular case, though, Barrett's role in this is not particularly inconsequential. The proof at trial of his negotiations with Degonski, his efforts to try and establish the price, the place, the time, the amount, those were extensive. They all came out at trial. Degonski testified at trial and testified at great length about setting up the deal, how the deal took place, discussions after the deal. This isn't kind of someone who briefly swooped into a conspiracy and then swooped out. Barrett was intimately involved with Degonski, and that relationship was what led to the conduct that happened. So he was very involved through his contact with Degonski and Williams. So unless the court has any other questions on that particular issue, I'll move on to the question of the buyer-seller instruction. So in this case, the defendants have, I'm sorry, the appellants have argued that the jury should have been provided with a buyer-seller instruction. A buyer-seller instruction may be appropriate based on the facts, but these particular facts did not merit a buyer-seller instruction and would have only confused the jury. It wasn't an abuse of discretion for the district court not to give the instruction, and even if it was, it was harmless error. As this court explained in Riggs, even where a buyer-seller instruction might be appropriate, a buyer-seller instruction is unnecessary if the district court judge has given a complete instruction reciting all of the elements of conspiracy and requirements for membership in the conspiracy, which did occur here. The buyer-seller instruction is designed to protect the end user who buys drugs for their personal use from being caught up in a conspiracy, and that's not what occurred here. There's ample evidence that all of the co-conspirators bought and then sold the pills. As I've already discussed at length, this was a chain conspiracy, and even if the different appellants didn't know all of the parties in the conspiracy, the evidence of trial certainly showed that they knew the individuals above them and below them. And I think that Shelton is instructive in this particular case. The jury in the case was required to find beyond a reasonable doubt that the drug, the particular drug, caused overdoses, but the jury wasn't required to conclude that the defendant agreed to distribute a particular controlled substance. Barrett tried to limit his involvement in the conspiracy, but as I've already discussed, he was intimately involved, particularly with Degonski and Williams. And I also think, lastly, Ham is very instructive. There, the Sixth Circuit explained, this court explained, that even where it is not totally implausible that a defendant only had a buyer-seller relationship with other co-conspirators, that was not the version of the events the jury chose to accept. And the evidence was sufficient there to convict on count one, just as it is here. There, the court found that there was adequate proof of a conspiracy with a relatively new relationship, where only two transactions had transpired, but the quantities were large and involved extensive planning that was carried out by phone calls and messages, and the relationship was meant to be ongoing. I may be getting you off your argument, and maybe you've talked to this some already, but, you know, getting back to this conspiracy and who gets swept in and what's required, and you told me about the indictment having these extra particulars, but it's not really relevant to the core charge. But when we get to this particular 846 conspiracy and some of these extras that you've talked about, tell me how this relates to, well, how, tell me how Elaine, the Elaine case affects this, because there, any fact that increases a mandatory minimum element has to be submitted to the jury beyond a reasonable doubt. And if that's the case, don't you have to take some of these particulars that you talked about and actually prove them up to the jury in order to meet that requirement? Respectfully, no, Your Honor. After Apprendi and Elaine, this court has held specifically in, like, Datto, I hope I'm pronouncing that correctly, that the government doesn't need to prove mens rea as to the type and quantity of the drugs in order to establish the violation generally. Now, specifically to hold them responsible, is that part of your question about the responsibility for the overdoses? Right, because here, in many of these, you're alleging the death or serious bodily injury element, which, okay. And so even some of these downstream people, if they're charged with that, isn't there an element of this has to be, that the jury has to prove up? Or it's just proving that they were involved in it enough to take care of that? Respectfully, yes, Your Honor. All that's required to be proved is that they were involved in both the substantive counts and the conspiracy, and then that the use of that drug resulted in a serious bodily injury or death. Particularly Jeffries and, pardon me, Jeffries, Jeffries is very instructive in terms of the issue of Scienter. And Ham as well, actually. But there, the jury was not required to find that there was any element of mens rea associated with the death or serious bodily injury. All that was required to be proven was that the defendant intended to possess with intent to distribute and distribute the drugs. Shelton is also very instructive. There, the jury was required to find beyond a reasonable doubt that the distribution of the particular drug caused the decedent's death in that case. But this court held that to hold the defendant guilty of the offense, all that the jury was required to conclude was that the defendant agreed to distribute a controlled substance. So under that precedent, no, the defendant didn't need to have a particular mens rea as to the quantity, quality of the drug. Just simply that they possessed it with intent to distribute it and that the use thereof of that drug resulted in a serious bodily injury or death that is alleged in the different counts of the indictment. So unless the court has any other questions on the issue of buyer-seller, I'll move on to the arguments related to aiding and abetting. So on appeal and on reply, Bradley and Barrett both argue that the inclusion of aiding and abetting in the substantive counsel is somehow improper. In this case, this isn't the case of a lookout or someone who bought a precursor drug. These defendants are all principals who distributed these pills. Bradley raises issues with his convictions on the substantive counts, but each of the substantive counts alleged distribution that occurred on or about July 5th through 6th or on or about July 5th through 7th and that the use of those drugs resulted in particular individual serious bodily injuries or death. That was shown at trial, and his arguments fail on two different points. First, the evidence at trial did show that on or about July 4th through 5th, Bradley helped Fikowski make thousands of pills. A portion of those pills were distributed to Davis. Based on the evidence at trial, the jury could easily infer that came from Bradley and went to Davis. Another portion of those pills went to Lacrysta Knowles. She testified at trial about that transfer. Both Fikowski and Bradley were present for that transfer, and both were involved in that transfer. Both the Davis pills and the Knowles pills then continued to be distributed downstream and ultimately resulted in some serious bodily injuries and a death as alleged in the indictment. Either through a principal theory or an aiding and abetting theory, the evidence at trial showed that Bradley was responsible for the pills that were distributed to both Knowles and Davis. Second, in terms of the overdoses, Bradley seems to argue that he must have put the drugs in the hands of the victim to be liable for the overdoses, and that is not the case. What is necessary to be shown is that the pills resulted in an overdose, which the proof of trial did. The ultimate question that the jury had to answer was, did the person distribute the drugs, and were those drugs the but-for cause of the serious bodily injury or the death? And then if the answer is yes, it doesn't matter if it passed through multiple people's hands. And the appellant's arguments, Bradley's arguments, actually would have perverse results. That the end sellers would be liable for the significant penalty, but the producer of the deadly pills higher up the chain would somehow be absolved of that penalty or avoid that penalty because of the multiple layers of participants. And that is not how the statute is crafted. So unless the court has any other questions on the eating and abetting, I'll move on very briefly to the motion to suppress. To talk about Williams' motion to suppress his statement, in his opening brief, I didn't understand him to raise the claim that he had invoked earlier in the interview. This wasn't an argument made to the district court, so this argument should be reviewed for plain error. But I would point to the transcript of that interview, which is laid out on page 21 of Williams' appeal brief. Williams says, I ain't got no lawyer or nothing, you know what I'm saying, I'm not going to do this all right here, and later says I don't want to be in this room. Those are not clear indications of counsel. And in fact, when he clearly invoked, that was when the interview stopped. So that argument does fail. Secondly, in terms of the argument about custody, the Hinojosa elements are simply not met here. So I see that I'm out of time, so unless the court has any other questions, I will ask that the court affirm the lower court's rulings and the jury's verdict. Okay. Thank you, Ms. Kloff. We'll hear again from Mr. Terry. You have two minutes of rebuttal. Thank you, Your Honor. Two points. First, Williams, Dolgonsky, Barrett, and Randolph never knew the drugs were counterfeit, never knew there was fentanyl in the drugs. That proof is undisputed in the record. Williams did not know. Dolgonsky did not know. Barrett did not know. And Randolph did not know. Randolph is further downstream from Barrett. She's a Barrett customer. There is some evidence that Williams may have been to Barrett's house once before. There is some evidence of that. But other than that, what happened on July 5th is the extent of the Barrett-Williams relationship. Number two, we appreciate counsel's suggestion that this indictment was structured in the way it was to give us notice. But we don't accept that. We contend that this indictment is part of the prosecution's strategy, part of their tactics. This indictment was detailed. It included objects. It included means and methods. It included manufacturing so that they could bring this proof into the courtroom. If this was a generic 846, then we would be talking about Williams and Dolgonsky and Barrett. We would not be looking at Eric Falkowski. Look at how the indictment's involved. This is the fifth superseding indictment. When they made a deal with Falkowski, they changed the indictment so that they could use Falkowski as a witness in this trial. They would not have been able to use him if they had used the generic indictment. And Falkowski brought to this trial years of horrible, abusive conduct of intentionally manufacturing toxic pills that killed people in Florida and in Tennessee. So this was done to further the prosecution's motive. And when they described this precise, discrete conspiracy, they made it necessary that our client had to know about this discrete conspiracy in order to join it. And he did not. There's no evidence that he knew the objects of this conspiracy. Thank you for listening to me. Thank you, Mr. Terry and Mr. Robinson. Thank you, Your Honors. Two real quick points, since I have two minutes. With respect to the multiple conspiracy issue that we've raised in our brief and the fact that there was prejudice, I would point out this. Although the government calls it a chain conspiracy, I think it's reasonable to see that there is at least two conspiracies here. And when there is a multiple conspiracy evidence at trial, only one charge, it's appropriate for the jury to receive a multiple conspiracy instruction. That's how the Kaver case, and that never happened. And so the primary risk that's associated with multiple conspiracies being tried in one trial under one indictment, under one conspiracy, is the transference of guilt from one defense to another with respect to their involvement. And I think that applies here. The transference of guilt for the offenses that took place in Murfreesboro by the distributors of drugs in that location, it clearly shaded the jury's verdict here, especially given the fact there's no multiple conspiracy instruction. Now, with respect to the substantive counts, it's pretty clear, first of all, with respect to the government's point, if there is sufficient evidence of a conspiracy to distribute these substances that caused death or injury, then Mr. Bradley is being held accountable for those deaths at the end users. But there has to be a limit. These were drugs that were sold three, four transactions after the drugs were originally distributed by Bradley. And there has to be a limit as to when he's guilty of those substantive distribution offenses. So with that, we'd ask that the court vacate Mr. Bradley's convictions and sentence and remand him to the district court for further proceedings. Okay, Mr. Robinson, thank you. Mr. Jager? Yes, I have a couple of points to make. I'm going to refer the court to certain portions of the record to show the importance of this issue. The indictment, like what the government argues, does not say it was a conspiracy to trade a controlled substance to fentanyl. It doesn't say that to give us notice. What it says is, intent to distribute a mixture or substance containing a detectable amount of fentanyl is scheduled to control substance. That's how specific this indictment is. And I found it, 256, page 660. If you look at the instructions that the court gave, document 617, 4543, he tells the jury, Count one indictment charges each defendant with conspiracy to distribute and possess of intent to distribute counterfeit Percocet pills containing fentanyl, which is a controlled substance, and to obtain monetary profit through distribution of the counterfeit pills. The judge goes on on the same page, 4544. The government must prove each of the following elements beyond a reasonable doubt. One, two or more people conspired or agreed to distribute and possess of intent to distribute counterfeit pills containing fentanyl, and to obtain monetary profit through distribution of counterfeit pills. Go on to page 4545. The judge says, what the government must prove is that there was a mutual understanding, spoken or unspoken, between two or more people to cooperate with each other to distribute and possess with intent to distribute fentanyl, and to obtain monetary profit from that distribution. The court says this is essential. Go on to page 4546. What does the court tell the jury? The government must prove that each defendant knowingly and voluntarily joined the agreement. The government must prove that the defendant knew the conspiracy's main purpose, the objects defined by the government, whose words matter. And then the court goes on, involuntarily joined the conspiracy, intending to help advance or achieve its goals. This case completely lacks proof that Mr. Williams did any of those things. And we ask for the sentence to be vacated. Okay. Thank you, Mr. Jager. We'd like to thank all counsel for arguments this morning, and would specifically like to thank you, Mr. Terry, and you, Mr. Jager. You've taken this case under the Criminal Justice Act. We, as a court, recognize the service that that provides to our system at large, and certainly to your clients, and I'm sure they very much appreciate your representation as well. But, again, thanks to all of you, and we'll just take this case under advisement, and I have a decision for you in due course.